**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SAIO BARZEE,

                                        Plaintiff,

                v.                                                    8:21-CV-902
                                                                     (GTS/CFH)

KENNETH H. TYLER, et al.,

                                        Defendants.

---

**APPEARANCES:**

Saio Barzee
13-B-1933
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION & ORDER**

**I.  In Forma Pauperis**

        Plaintiff Saio Barzee ("plaintiff"), pro se, purported to commence this action on

August 11, 2021, with the filing of a complaint and, in lieu of paying this Court's filing

fee, a motion for leave to proceed in forma pauperis ("IFP").  See Dkt. No. 1 ("Compl.");

Dkt. No. 10.  Plaintiff declares he is unable to pay the filing fee and has provided

sufficient information, including a certified copy of his prisoner trust fund account.  See

Dkt. No. 10.  The undersigned has reviewed plaintiff's IFP motion and determines that he financially qualifies to proceed IFP for the purpose of filing.[1]

## II.  Initial Review

### A.  Legal Standard

In addition to determining whether plaintiff qualifies for IFP status, the Court must consider the sufficiency of the complaint's allegations pursuant to the standards set forth in Title 28 of the United States Code, Section 1915 ("Section 1915").  Section 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  It is a court's responsibility to determine that a plaintiff may properly maintain the complaint before permitting him to proceed with an action.  See id.

Where, as here, the plaintiff acts pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  A pro se litigant's pleadings are held to a less stringent standard than those drafted by an attorney.  See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties.").  However, this

---

[1] Plaintiff is advised that although he has been granted IFP status for the purposes of this review, he is still required to pay any fees and costs he might incur in this action.

"does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citations omitted).

Pursuant to the standards set forth in Federal Rule of Civil Procedure ("Fed. R. Civ. P."), 8, a pleading must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  See FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought . . . ."  FED. R. CIV. P. 8(a)(1), (3).

Although "[n]o technical form is required," the rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).  Further, Rule 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."

Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  If dismissal is warranted and the plaintiff is pro se, the court generally grants leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Chavis v. Chappis, 618 F.3d 162, 170 (2d Cir. 2010) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).

### B.  Complaint

### 1.  Factual Allegations

Plaintiff states that on May 23, 2013, after pleading guilty to the charge of "Robbery in the 1st Degree," he "was sentenced to 8 years with 3 years post release supervision to run concurrent with his violation of probation."  Compl. at 4, ¶ 12.  On

July 25, 2013, plaintiff pursued an appeal before the Supreme Court of the State of New York Appellate Division Fourth Department.  Id. at 4, ¶ 13.  Plaintiff filed his notice of appeal with the Clerk of the Supreme Court Onondaga County, who acknowledged receipt, in addition to serving a copy upon the Onondaga County District Attorney's Office.  Id.

"Thereafter, on or about August 1, 2013," the Onondaga County District Attorney's Office "notified the Appellate Division - Fourth Department that the People received a certified copy of [] plaintiff's notice of appeal."  Compl. at 5, ¶ 14.  However, plaintiff contends:

> [H]e was never served with an order pursuant to Section 460.15 of the Criminal Procedure Law stating that a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department granting permission for the plaintiff to appeal to the Appellate Division, Fourth Department; nor was there an order filed by a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department stating any reasons for the denial of the plaintiff's application for assignment of counsel.

Id. at 5, ¶ 15.

On May 4, 2017, plaintiff appeared in Clinton County Court where he was convicted of "criminal possession of a weapon 3rd Degree (P.L. 265.02) and promoting prison contraband 1st Degree (P.L. 205.25)[.]"  Compl. at 5, ¶ 16.  He was sentenced on July 17, 2017, "to concurrent prison terms of 3 to 6 years to be served consecutively to the term of incarceration imposed by the Onondaga County Court."  Id.

On or about July 16, 2020, plaintiff filed and served "a true and exact copy of a motion demanding Exhibits along with a notice to settle record and, inter alia, the proof of service via first class mail," upon Onondaga County Assistant District Attorney Michael A. Kasmarek.  Compl. at 6, ¶ 17.  On August 12, 2020, defendant Onondaga

County Chief Assistant District Attorney Kenneth H. Tyler ("ADA Tyler") filed a notice of motion to dismiss the appeal on grounds that plaintiff failed to timely perfect his appeal. Id. at 6, ¶ 18.  Plaintiff filed an opposition to the motion.  Id. at 6, ¶ 19.  Ultimately, the Appellate Division Fourth Department granted the motion, dismissing the appeal "without furtherance unless perfected on or before December 3rd, 2020."  Id. at 6 ¶ 20.

Plaintiff filed a "motion to proceed as a poor person and for the assignment of counsel," which was granted.  Compl. at 6-7, ¶¶ 21-22.  Accordingly, Philip Rothschild, Esq. ("Attorney Rothschild") was assigned to represent plaintiff.  See id. at 7, ¶ 22. Plaintiff states that Attorney Rothschild had to file "many motions" seeking extensions of time to file and perfect plaintiff's appeal because Attorney Rothschild had "not received all of the papers from the Onondaga County Clerk's Office and from plaintiff's prior defense counsel."  Id. at 7, ¶ 23.

On February 26, 2021, despite having counsel for his appeal, plaintiff filed a pro se "CPL Article 440.10 motion to vacate the Judgment of Conviction[.]"  Compl. at 8, ¶ 26.  Plaintiff served "the necessary papers" upon Onondaga County District Attorney William Fitzpatrick, Attorney Rothschild, and "the Supreme Court of the City of Syracuse[.]"[2]  Id.

On April 7, 2021, plaintiff wrote a letter to the Onondaga County Clerk, seeking information as to "the whereabouts of the CPL Article 440.10 motion papers" as he had not received a "receipt" from the County Court.  Compl. at 8, ¶ 27.  Around this time, plaintiff also received correspondence from Attorney Rothschild's law firm confirming

---

[2] While plaintiff's complaint does not indicate expressly which existing conviction his motion seeks to vacate, it would appear to be the 2013 conviction because that conviction is from Onondaga County whereas the 2017 conviction is from Clinton County.  See Compl. at 4, 5 ¶¶ 12, 16.

receipt of his previous letter.  See id. at 8, ¶ 28.  Due to plaintiff's concerns that the

"County Court" had not acknowledged receipt of his "Article 440.10 motion[,]" Attorney

Rothschild indicated he would have his assistant check with defendant Onondaga

County Court Judge Stephen J. Dougherty's ("Judge Dougherty") law clerk to "see if the

440.10 motion was deemed filed."   Id.  Thereafter, on April 29, 2021, Judge

Dougherty's law clerk, defendant Bonnie A. Buccina ("Ms. Buccina"), wrote a letter to

plaintiff acknowledging receipt of plaintiff's motion and provided him with the

corresponding index number.  Id. at 9, ¶ 29.

On May 4, 2021, plaintiff wrote a letter to Ms. Buccina, advising her that he

received her letter and that "the Court has neglected to establish a return date for which

[ADA Tyler] . . . ha[d] to file an answer (if any) to plaintiff's CPL Article 440.10 motion[.]"

Compl. at 9, ¶ 30.  Plaintiff also informed Ms. Buccina "that the County Court actions are

prejudicial to [] plaintiff's defense because [he] submitted the required papers to all of

the necessary parties upon the Court on the 25th day of February 2021 and therefore

[the People] had already had approximately 60 days['] notice to prepare a response[.]"

Id. at 10, ¶ 31.  Plaintiff added that "said time frame was approximately 30 days after the

return date that plaintiff had asked for" within his motion.  Id.  In the same letter, plaintiff

requested that the County Court "establish a return date for [the People] to answer" the

motion not to "exceed past another 60 days timeframe."  Id.  Plaintiff concluded his letter

by requesting that if ADA Tyler failed to respond before the return date, "the Court

should determine that the [P]eople's time to respond has expired and that the [P]eople's

silence should mean that the [P]eople have conceded."  Id.

The following day, May 5, 2021, plaintiff "submitted a letter, entitled as the written Notice of Index Number" to ADA Tyler, and enclosed the letter he wrote to Ms. Buccina. Compl. at 10, ¶ 32.  Plaintiff informed ADA Tyler that the County Court had failed to establish a return date and that the People had failed to submit any papers "as required pursuant to N.Y. Ct. Rules, section 202.8, subdivision (a), and that no stipulations of adjournment has been agreed upon[.]"  Id. at 10-11, ¶ 32.

On June 8, 2021, plaintiff sent a letter to both ADA Tyler and Ms. Buccina expressing his concern about the County Court's "lack of reason to conduct their responsibilities [which] still has not been cured[.]"  Compl. at 11, ¶ 33.  Plaintiff "request[ed] that the [P]eople's time to respond be "deemed as expired and that the [P]eople have conceded."  Id.  In the same letter, plaintiff expressed concern that because he could "not appeal his criminal conviction until his 440.10 motion was completed because many of the arguments raised in the 440.10 motion are unpreserved due to the prejudicial reasons raised in plaintiff's 440.10 motion papers and are thus non-reviewable by the Appellate Division."  Id. at 11, ¶ 34.  He added that he has been "deprived of his liberty and his right to equal protection of the law as a result of the Court stating that the Court won't hold any form of ruling. . . until the [P]eople provided a response. . . and by the Court failing to establish a return date[.]"  Id. at 12, ¶ 35.  Plaintiff has not received a response from either ADA Tyler or Ms. Buccina.  See id. at 12, ¶ 36.

On July 29, 2021, approximately two weeks before plaintiff commenced this action, he received a letter from Attorney Rothschild informing him that Attorney Rothschild had "finished reviewing all of the papers, researched the issues, and had

prepared a draft brief for review."  Compl. at 7, ¶ 24.  In response, plaintiff wrote a letter to both Attorney Rothschild and the Appellate Division Fourth Department "requesting the right to file a pro se supplemental brief along with the Direct Appeal[.]"  Id. at 8, ¶ 25.  Plaintiff also requested that his "CPL Article 440.1 motion be perfected (if needed) along with the direct appeal, so that the plaintiff's arguments can be preserved[.]"[3]  Id.

## 2.  Demand for Relief

Plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983 for purported violations of his federal and state constitutional rights, seeking declaratory and injunctive relief .  See Compl. at 1, ¶ 1.  Plaintiff's complaint asserts generally that this action is to "cure [] the prejudicial actions being wrongfully inflicted upon the unwilling plaintiff by the herein stated defendants."  Id. at 12, ¶ 37.  He "contends that his [F]ifth and [F]ourteenth [A]mendment right to due process, along with his right to the [E]qual [P]rotection [C]lause of the [F]ourteenth [A]mendment are being violated[.]"  Id. at 13, ¶ 38.  More specifically, he contends that Judge Dougherty, "with the aid of" his law clerk, Ms. Buccina, "is neglecting to properly perform his official duties. . . by prejudicially and wrongfully declaring that he will not render a judicial decision pertaining to plaintiff's CPL Article 440.10 motion 'until such time as the [P]eople's brief is received.'"  Id.

Moreover, plaintiff contends his constitutional rights are being violated by ADA Tyler, who is "neglecting to properly perform his duties ensuing from. . . the special responsibilities of prosecutors and other Government lawyers as is required under New

---

[3] The undersigned notes that the Fourth Department rendered a decision as to plaintiff's appeal on April 22, 2022, affirming his conviction.  See People v. Barzee, KA 20-01020, 2022 WL 1197636 (4th Dept. Apr. 22, 2022).  However, as addressed below, the relief requested in this action concerns plaintiff's pending CPL 440 motion before the Onondaga County Court.

York rules of professional conduct[.]"  Compl. at 13, ¶ 39.  Plaintiff asserts that ADA

Tyler has "fail[ed] to correct the harmful errors being wrongfully inflicted upon [] plaintiff

by defendant Stephen J. Dougherty."  Id.

Plaintiff states that he is being denied procedural due process as a result of

"defendants' failure to disclose all of the documentations being requested by [] plaintiff's

appellate division assigned counsel."  Compl. at 15, ¶ 43.  Regarding his purported

equal protection denial, he adds that defendants' actions are "arbitrarily and irrationally

singl[ing] out and treat[ing] [plaintiff] differently from others in similar situations and that

there is no rational basis for the difference in treatment."  Id. at 14, ¶ 44.  Plaintiff

asserts that defendants are not entitled to immunity from suit under the Eleventh

Amendment because this action seeks only declaratory and injunctive relief.  Id. at 15,

¶¶ 46-48.  Moreover, he claims that the Eleventh Amendment "does not apply to any

suits against County and City officials."  Id. at 16, ¶ 47.

Plaintiff's complaint sets forth two separately titled causes of action.  See Compl.

at 15-23, ¶¶ 45-67.  "Count One" seeks declaratory relief in the form of an order

"declaring that [] defendants have acted in violation of the United States Constitution."

Id. at 15, ¶ 45.  Specifically, he seeks an order declaring that (1) Judge Dougherty

wrongfully and unconstitutionally failed to establish a return date; (2) plaintiff's motion to

vacate must be granted upon considering the merits, without conducting a hearing, as it

has been "either conceded to by the [P]eople" or "substantiated by the [] documentary

proof"; (3) it is "not mandatory" for the People to respond to a motion to vacate; (4)

Judge Dougherty unconstitutionally prejudiced plaintiff's defense; (5) Judge Dougherty

rule the People's time "has expired"; (6) Judge Dougherty render a decision "within (14)

days of the completion" of the instant action; (7) the "exhaustion doctrine. . . is not required because [] plaintiff is not asking for the federal court to overturn his conviction"; (8) the People had reasonable notice and fair opportunity to review plaintiff's claims and correct any alleged errors "but failed to do so"; and (9) it is ADA Tyler's "special responsibilit[y]" as a prosecutor to "either file[] an answer admitting to the allegations raised" in plaintiff's motion or file an "Article 78 mandamus to compel" Judge Dougherty to render a decision.  Id. at 16-20, ¶¶ 49, 59.

"Count Two" of plaintiff's complaint demands injunctive relief compelling ADA Tyler to "stop instituting [or] allow to be instituted or maintain a criminal charge when the prosecutor knows or it is obvious that the charges raised in the indictment against [] plaintiff are not supported by probable cause[.]"  Compl. at 20-21, ¶ 60.  He seeks to compel ADA Tyler to "openly declare. . .that the [] failure to file or serve any response papers shall be deemed as consent to the granting of" his motion.  Id. at 21, ¶ 61. Additionally, he seeks to compel ADA Tyler, "in the interest of justice," to "file a grievance against [Judge Dougherty]" and, assuming his declaratory relief request is successful and Judge Dougherty "refuses to follow" same, to file an "Article 78 mandamus to compel dismissal of the indictment[.]"  Id. at 21, ¶ 62.  Plaintiff also seeks to compel ADA Tyler to provide plaintiff "with the pre-trial line up transcripts and with any other papers or transcripts which have not yet been disclosed to the plaintiff."  Id. at 21, ¶ 63.

Furthermore, as a part of Count Two's injunctive relief request, plaintiff seeks to compel Judge Dougherty to "disqualify himself" from presiding over the plaintiff's motion if he continues to: (1) "fail to determine that []plaintiff's CPL 440.10 motion papers have

adequately met the burden of demonstrating that their [sic] exist substantial legal grounds for vacating the judgment"; (2) "fail to determine that . . . [the People] shall be deemed as giving consent"; or (3) "fail to render a decision as being requested by [] plaintiff[.]"  Compl. at 22, ¶¶ 64-66.

Finally, plaintiff contends that the "exhaustion of State remedies is not required because (1) the delay is attributable to the State's Court System and (2) there is an absence of available State corrective process, and that process, even if available, would be ineffective in protecting plaintiff's rights."  Compl. at 23, ¶ 67.  Plaintiff states that the "numerous letters written to the defendants. . . satisfies the exhaustion requirement[.]" Id.  He concludes that it is ADA Tyler's "duty to file an [A]rticle 78 mandamus to compel" Judge Dougherty "to render a decision" and give notice "of the [P]eople's intentions."  Id.

## C. Analysis[4]

In light of plaintiff's pro se status, the undersigned has liberally construed the complaint's allegations, identifying the strongest arguments raised therein.  See Kirkland, 760 F.3d at 224.  As asserted in his complaint, plaintiff brings this action pursuant to Title 28 of the United States Code, Section 1983 ("Section 1983"), which is the appropriate mechanism for the relief sought.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (noting that Section 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and the laws' of the United States.").  Plaintiff alleges violations of his

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

federal constitutional rights, with specific claims relative to his procedural due process and equal protection rights guaranteed by the Fourteenth Amendment.

### 1. Immunities[5]

#### i. Judicial Immunity

The Second Circuit has held that "absolute immunity" is appropriate for judges in the exercise of their judicial function.  Tulloch v. Coughlin, 50 F.3d 114, 116 (2d Cir. 1995) (citations omitted).  Judicial immunity may be overcome only in two circumstances: (1) where the actions were taken outside of judicial capacity, or (2) where the actions, though judicial in nature, were taken in complete absence of all jurisdiction.  See Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (citations omitted).  Judicial immunity also applies to judicial law clerks, who are considered an extension of the judges they serve.  See Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1988).

In determining whether judicial immunity applies, the first step in the analysis is to determine the nature of the act.  See Mireles, 502 U.S. at 12-13.  If the nature of the act is "a function normally performed by a judge," the judge is acting within judicial capacity.  Id. at 12.  The scope of the judge's jurisdiction must be "construed broadly."  Gross v. Rell, 585 F.3d 72, 85 (2d Cir. 2009) (quoting Stump v. Sparkman, 435 U.S. 349, 359 (1978)).  As such, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."  Stump, 435 U.S. at 359.  Generally, "acts arising out of, or related to, individual cases

---

[5] Plaintiff asserts in his complaint that "the Eleventh Amendment immunity rule does not apply to suits for injunctive or declaratory relief against State officials sued in their official capacity."  Compl. at 15, ¶ 46.  However, the undersigned need not address this contention considering the alternative grounds for dismissal, addressed in detail herein.

before the judge are considered judicial in nature[.]"  Bliven v. Hunt, 573 F.3d 204, 210 (2d Cir. 2009).

The undersigned finds that, regardless of the relief plaintiff seeks, Judge Dougherty and Ms. Buccina are entitled to judicial immunity because a Section 1983 action is not available against a judicial officer absent allegations of a violation of a prior declaratory decree or the unavailability of declaratory relief.  See, e.g., Bracci v. Becker, No. 1:11-CV-1473 (MAD/RFT), 2013 WL 123810, at *3 (N.D.N.Y. Jan. 9, 2013) aff'd 568 F. App'x. 13 (2d Cir. 2014) (summary order) (discussing that "prospective injunctive relief . . . is not available under § 1983 absent an allegation of a violation of a prior declaratory decree or that declaratory relief was unavailable.") (citing Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999)); Montes v. O'Shea, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *4 (N.D.N.Y. Apr. 6, 2021), report and recommendation adopted by, No. 1:21-CV-303, 2021 WL 1758858 (N.D.N.Y. May 4, 2021) (quoting Bobrowski v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (additional citation omitted) (discussing judicial immunity applies in Section 1983 case "unless a declaratory decree was violated or declaratory relief was unavailable")); see also 42 U.S.C. § 1983.  Although plaintiff has attempted to bring an action pursuant to Section 1983 against two judicial officers, he has failed to allege any violation of a prior decree or the unavailability of declaratory relief.  See generally Compl.  Importantly, as discussed below, plaintiff's procedural due process claim fails because he has an available state remedy to seek declaratory and injunctive relief against defendants via N.Y. C.P.L.R. § 7803.  Accordingly, any purported Section 1983 claims against Judge Dougherty and Ms. Buccina are not actionable.

### ii.  Prosecutorial Immunity

Prosecutors are entitled to absolute immunity based on the scope of their function as an advocate in the judicial phase of criminal process.  See Warney v. Monroe Cnty., 587 F.3d 113, 120-121 (2d Cir. 2009).  The "ultimate question" of prosecutorial immunity is "whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they engaged in the challenged conduct."  Id. at 121 (quoting Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996); see also Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) (discussing that "[t]he cases thus draw a line between the investigative and administrative functions of prosecutors, which are not protected by absolute immunity, and the advocacy functions of prosecutors, which are so protected").  Although prosecutorial immunity bars Section 1983 claims for damages, an official-capacity claim for prospective injunctive relief may proceed to remedy an alleged "ongoing violation of federal constitutional law."  Avitabile v. Beach, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017) (citations omitted).  As plaintiff seeks only injunctive relief to remedy the allegedly-continuing constitutional due process and equal protection violations relating to the lack of response and decision on his motion to vacate, his claims against ADA Tyler are not barred by absolute immunity.

## 2.  Procedural Due Process

The Due Process Clause provides that a State may not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The "two threshold questions" in any procedural due process denial claim are: (1) "whether the plaintiff possessed a protected liberty or property interest protected by the United States Constitution or federal statutes[,]" and (2) "if so, what process was due before plaintiff could be deprived of that interest."  Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995).  "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees."  Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted).  "Under the latter scenario, a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to deprivation."  Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001); see also N.Y. State Nat. Org. for Women v. Pataki, 261 F.3d 156, 169 (2d Cir. 2001) ("[A] due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.") (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  On the other hand, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process."  Hellenic, 101 F.3d 880 (citing Hudson v. Palmer, 468 U.S. 531, 532 (1984); Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)).

16

Although Section 1983 "allows plaintiffs with federal or constitutional claims to sue in federal court without first exhausting state judicial or administrative remedies" (Hellenic, 101 F.3d at 881 (citations omitted)), "[w]hen § 1983 claims allege procedural due process violations," the Court may nonetheless evaluate whether state remedies exist "because that inquiry goes to whether a constitutional violation has occurred at all." Chase Grp. All. LLC v. City of N.Y. Dept. of Fin., 620 F.3d 146, 153 (2d Cir. 2010) (quoting Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 468 n. 12 (2d Cir. 2006) (internal quotations omitted).  Said differently, "[w]hen there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty[,]" "there *is no* constitutional violation (and no available § 1983 action)."   Hellenic, 101 F.3d at 882 (collecting cases).

The Second Circuit has determined that Article 78 of the New York State Civil Practice Law and Rules is "a perfectly adequate postdeprivation remedy" in cases involving alleged procedural due process violations by state actors, including prolonged delays in governmental decision-making.  Hellenic, 101 F.3d at 881 (collecting cases); see, e.g., C.C.S.com USA, Inc. v. Gerhauser, 518 F. App'x. 1, 3 (2d Cir. 2013) (summary order) (stating there was no denial of due process for zoning board's delay where, inter alia, plaintiff never pursued an Article 78 hearing to compel); DeMartino v. N.Y. State Dept. of Labor, 167 F. Supp. 3d 342, 367 (E.D.N.Y. 2016) (noting availability of Article 78 mandamus relief for delayed N.Y. Lab. L. § 220 hearing "counsel[s] against the finding of a due process violation") (citations omitted).  "[Article 78 is] an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, [and] provides both a hearing and a means of redress for petitioners."  Hellenic, 101 F.3d at 881.

"Additionally, constitutional issues can be decided in Article 78 proceedings."  Id. (citing

Christ the King Reg. High Sch. v. Culvert, 815 F.2d 219, 224-25 (2d Cir. 1987)).

Plaintiff is not challenging any established state procedure purportedly denying

him procedural due process; rather, his allegations are directed at the acts of three

individual government officials:  Judge Dougherty, his law clerk, Ms. Buccina, and ADA

Tyler.  See Compl. at 2 ¶¶ 4-6, 8.  Plaintiff contends that "exhaustion of State remedies

is not required because (1) the delay is attributable to the State's Court System and (2)

there is an absence of available State corrective process, and that process, even if

available, would be ineffective in protecting plaintiff's rights."  Id. at 23, ¶ 67.

As an initial matter, plaintiff seeks an order declaring, inter alia, that it is ADA

Tyler's "responsibility, in the interest of justice and under the special responsibilities of

prosecutors and other government lawyers," to have filed either an answer to his

"440.10 motion" or "an Article 78 mandamus to compel [Judge Dougherty] to render a

decision."  Compl. at 20, ¶ 59.  However, an Article 78 proceeding is an adequate post-

deprivation remedy in New York State.  See Hellenic, 101 F.3d at 882 (collecting

cases).  Plaintiff provides little to no explanation as to what, if anything, is preventing

him from initiating an Article 78 proceeding.  See Compl. at 20, ¶ 59.  He references

only the "numerous letters written to the defendants" in contending that the complained

of delay "is attributable to the State's Court System" and that, even if there were an

available "State corrective process," it would be "ineffective in protecting plaintiff's

rights."  Id. at 23, ¶ 67.  The letters referenced in plaintiff's complaint reiterate his

position that the "440.10 motion" should be granted based on the People's untimely

response.  See id. at 9-10, ¶¶ 28-31.  These letters do not demonstrate that plaintiff is

unable to commence an Article 78 proceeding in state court and plaintiff has not otherwise plead facts alleging that such proceeding would be inadequate.  See generally id.  Thus, an Article 78 proceeding would be the appropriate avenue for relief, which is adequately available to plaintiff under state law.  See id. at 16-20, ¶¶ 49-58; N.Y. C.P.L.R. § 7803.  As plaintiff has not attempted to pursue such remedy, his constitutional rights have not been violated.

### 3.  Equal Protection

The Equal Protection Clause requires state actors to treat similarly situated persons alike.  See City of Cleburn, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "Typically an equal protection claim is brought by a member of a vulnerable class, who alleges discrimination based upon that membership."  AYDM Assocs., LLC v. Town of Pamelia, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (citing Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)).  "However, 'the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.'"  Id. (citations omitted).

A plaintiff may bring a "class-of-one" claim by showing that he or she "was intentionally treated differently from others similarly situated and 'there is no rational basis for the difference in treatment.'"  AYDM Assocs., 205 F. Supp. 3d at 268 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 654 (2000)).  "'[C]lass-of-one plaintiffs 'must show an extremely high degree of similarity between themselves and the persons [with] whom they compare themselves.'"  Bill & Ted's Riveira, Inc. v. Cuomo, 494 F.

Supp. 3d 238, 246 (N.D.N.Y. 2020) (citations omitted); see also Hu v. City of N.Y., 927

F.3d 81, 93 (2d Cir. 2019) (resolving uncertainty as to the "extremely high" degree of

similarity required for comparators in "class-of-one" claims.  To prove a "class-of-one"

claim:

> [A] plaintiff must establish that he and a comparator are "*prima facie* identical" by showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and differences in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake."

Hu, 927 F.3d at 92 (quoting Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005),

overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008)).  Plaintiff

has not alleged any intentional targeting by any defendant based on his membership in

a specific class; rather, plaintiff is asserting a "class-of-one" claim by alleging that he

was "arbitrarily and irrationally singled out and treated differently from others in similar

situations and that there is no rational basis for the difference in treatment."  Compl. at

15, ¶ 44.

Plaintiff's purported equal protection claim is inadequate because he has failed

identify any "*prima facie* identical" comparators.  Hu, at 927 F.3d at 92 (citations

omitted); see, e.g., Callwood v. City of Kingston, No. 1:15-CV-1298 (GLS/TWD), 2020

WL 2838602, at *22 (N.D.N.Y. Jun. 1, 2020) (dismissing equal protection claim where

the plaintiffs failed to identify any similarly situated individuals that were treated

differently by the defendants); MacPherson v. Town of Southampton, 738 F. Supp. 2d

353, 371 (E.D.N.Y. 2010) (dismissing equal protection claim, "whether pled as a

selective enforcement claim or a class-of-one claim," where the complaint failed to

"identify any comparators or similarly situated entities").  While plaintiff asserts, in a conclusory manner, that he has been treated differently "from others in similar situations," he provides no indication as to whom.  Compl. at 15, ¶ 43.  Considering that class-of-one plaintiffs must show "an extremely high degree of similarity" among their comparators, it is likely that plaintiff is unable to point to anyone who is "*prima facie* identical."  Hu, 927 F.3d at 92 (citations and internal quotation marks omitted). Accordingly, it is recommended that plaintiff's Equal Protection claim be dismissed.

### 4. **Heck** Preclusion

A civil lawsuit may not be used to collaterally attack an existing criminal conviction.  See Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court of the United States held that a Section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate an extant criminal conviction unless "the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal. . . or called into question by a federal court's issuance of a writ of habeas corpus."  Heck, 512 U.S. at 486-87.

Plaintiff seeks an order that would indirectly compel his conviction to be invalidated, despite his assertion that he "is not asking for the federal court to overturn his conviction."  Compl. at 19, ¶ 57.  While framed as claims for procedural due process and equal protection violations, the requested relief, if granted, would effectively circumvent plaintiff's pending 440.10 motion and necessarily cause his existing conviction to be overturned.  Plaintiff seeks an order compelling ADA Tyler to stop

"instituting" or "maintain[ing]" the criminal indictment against him, stating that it lacks "probable cause." Compl. at 20-21, ¶¶ 60-62. Moreover, plaintiff requests this Court compel ADA Tyler to file an Article 78 and "dismiss the indictment" in the event Judge Dougherty does not comply with a declaratory judgment in his favor. Id. at 21, ¶ 62. Plaintiff asks this Court to declare that his motion vacate his conviction must be granted "upon considering the merits" as either conceded to by the People or "substantiated by unquestionable documentary proof." Id. at 17-18, ¶ 52. Such relief would cause his conviction to be invalidated.

Based on the facts alleged in the complaint, plaintiff's conviction has not been overturned by a state appellate court or called into question by a federal habeas corpus proceeding; thus, plaintiff may not bring any claims that, if resolved in his favor, would necessarily invalidate the conviction. To the extent plaintiff seeks declaratory and injunctive relief that would effectively invalidate his existing criminal conviction, such claims are barred by the Heck doctrine.

### III. Opportunity to Amend

Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). Plaintiff cannot cure the defects in his claims against defendants Judge Dougherty and Ms. Buccina because a Section 1983 action cannot be brought against them; thus, they are entitled to absolute immunity from suit. See

22

Montero, 171 F.3d at 761.  Accordingly, plaintiff's complaint should be dismissed with prejudice and without leave to amend as to those defendants.

As to ADA Tyler, plaintiff has failed to state a claim for procedural due process and equal protection violations, thus such claims should normally be dismissed without prejudice.  See, e.g., Walker v. Martuscello, No. 9:18-CV-1189 (BKS/CFH), 2020 WL 132313, at *2 (N.D.N.Y. Jan. 13, 2020); Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *12 (N.D.N.Y. Jan. 26, 2022).  However, as discussed above, whether framed as procedural due process or equal protections violations, plaintiff's requested relief is barred by the Heck doctrine.  Nonetheless, while the undersigned finds that the claims against ADA Tyler should be dismissed without an opportunity to amend, because such claims are barred by the Heck doctrine, they are dismissed without prejudice.  See Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) (citations omitted).

### IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (Dkt. No. 10) be **GRANTED** for the purpose of filing; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED**, **WITH PREJUDICE**, and without leave to amend, as to Stephen J. Dougherty and Bonnie A. Buccina; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED**, **WITHOUT PREJUDICE**, and without leave to amend, as to Kenneth H. Tyler;

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[6]

Dated: May 3, 2022
       Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge

---

[6] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).